UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MEYERS DIVISION

ALAN SHERDAN and KANDEE SHERDAN,

    Plaintiffs,                                CASE NO.:

-VS-

IBERIABANK,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiffs, ALAN SHERDAN (individually "Mr. Sherdan) and KANDEE SHERDAN (individually "Mrs. Sherdan") (colectively "Plaintiffs"), by and through the undersigned counsel, and sues Defendant, IBERIABANK, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone

subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

2. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

3. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

4. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

5. The alleged violations described herein occurred in Lee County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the

judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

6. Plaintiffs are natural persons, and citizens of the State of Florida, residing in Lee County, Florida

7. Plaintiffs are "consumers" as defined in Florida Statute § 559.55(8).

8. Plaintiffs are "alleged debtors."

9. Plaintiffs are the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporation which was formed in Louisiana with its principal place of business located at 200 West Congress Street, Lafayette, Louisiana 70501 and which conducts business in the State of Florida through its registered agent, C T Corporation System located at 1200 South Pine Island Road, Plantation, Florida 33324.

11. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

12. Defendant called Plaintiffs on Plaintiffs' cellular telephones approximately one hundred (100) times in an attempt to collect an alleged debt.

13. Defendant attempted to collect an alleged debt from Plaintiffs by this campaign of telephone calls.

14. Plaintiff "Mr. Sherdan" is the subscriber, regular user, and carrier of the cellular telephone number (239) ***-3601 and was the called party and recipient of Defendant's calls.

15. Plaintiff "Mrs. Sherdan" is the subscriber, regular user, and carrier of the cellular telephone number (239) ***-6907 and was the called party and recipient of Defendant's calls.

16. Upon receipt of the calls from Defendant, Plaintiffs' caller ID identified the calls were being initiated from, but not limited to, the following telephone number: (855) 880-1027.

17. Upon information and belief, some or all of the calls Defendant made to Plaintiffs' cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiffs will testify that they knew it was an auto-dialer because of the vast number of calls they received and because they heard a pause when they answered their telephones before a voice came on the line.

18. On several occasions over the last four (4) years Plaintiffs instructed Defendant's agent(s)/representative(s) to stop calling his cellular telephone.

19. In or about January 2013, "Mr. Sherdan" answered a call from Defendant to his aforementioned cellular telephone number. "Mr. Sherdan" spoke to an agent/representative of Defendant and informed the agent/representative that the calls to his cellular telephone were harassing, that he did not owe Defendant any money, the debt in question had been taken care of, and demanded that all calls from Defendant cease immediately.

20. Each subsequent call Defendant made to "Mr. Sherdan's" cellular telephone number was knowing and willful and done so without the "express consent" of "Mr. Sherdan".

21. Despite clearly and unequivocally revoking any consent Defendant may have believed they had to call "Mr. Sherdan" on his cellular telephone, Defendant continues to place automated calls to "Mr. Sherdan".

22. In or about June 2017, "Mr. Sherdan" answered a call from Defendant to his aforementioned cellular telephone number. "Mr. Sherdan" spoke to an agent/representative of Defendant and explained to the agent/representative of Defendant on the telephone that he has on numerous occasions asked Defendant to no longer call his cellular telephone. "Mr. Sherdan" again informed the agent/representative that the calls to his cellular telephone were harassing and demanded that they cease calling his cellular telephone number immediately.

23. "Mr. Sherdan's" numerous conversations with Defendant's agent(s)/representative(s) over the telephone wherein he demanded a cessation of calls were in vain as Defendant continues to bombard him with automated calls unabated.

24. In or about February 2013, "Mrs. Sherdan" answered a call from Defendant to her aforementioned cellular telephone number. "Mrs. Sherdan" spoke to an agent/representative of Defendant and explained that the calls from Defendant to her cellular telephone were harassing and demanded that they cease immediately.

25. Each subsequent call Defendant made to "Mrs. Sherdan's" cellular telephone was knowing and willful and done so without the "express consent" of "Mrs. Sherdan".

26. In or about June 2017, "Mrs. Sherdan" answered a call from Defendant to her cellular telephone. "Mrs. Sherdan" again informed Defendant through their agent/representative that the calls to her cellular telephone were harassing and demanded that all calls from Defendant to her cellular telephone cease.

27. "Mrs. Sherdan's" numerous conversations with Defendant's agent(s)/representative(s) over the telephone wherein she demanded a cessation of calls were in vain as Defendant continues to bombard her with automated calls unabated.

28. Defendant intentionally harassed and abused Plaintiffs on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

29. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiffs' cellular telephones in this case.

30. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as they did to Plaintiffs' cellular telephones in this case, with no way for the consumer, Plaintiffs, or Defendant, to remove the number.

31. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiffs despite these individuals explaining to Defendant they wish for the calls to stop.

32. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

33. Defendant has numerous complaints across the country against them asserting that their automatic telephone dialing system continues to call despite requested to stop.

34. Defendant has had numerous complaints from consumers across the country against them, asking to not be called; however, Defendant continues to call the consumers.

35. Defendant's corporate policy provided no means for Plaintiff to have his number removed from Defendant's call list.

36. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

37. Not a single call placed by Defendant to Plaintiffs was placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

38. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiffs.

39. From each and every call placed without consent by Defendant to Plaintiffs' cellular telephones, Plaintiffs suffered the injury of invasion of privacy and the intrusion upon their right of seclusion.

40. From each and every call without express consent placed by Defendant to Plaintiffs' cellular telephones, Plaintiffs suffered the injury of occupation of their cellular telephone lines and cellular telephones by unwelcome calls, making the telephone unavailable for legitimate callers or outgoing calls while the telephone was ringing from Defendant's calls.

41. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of their time. For calls they answered, the time they spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiffs had to waste time to unlock the telephones and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular telephones, which are designed to inform the user of important missed communications.

42. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones was an injury in the form of a nuisance and annoyance to Plaintiffs. For calls that were answered, Plaintiffs had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to waste time to unlock the telephones and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular telephones, which are designed to inform the user of important missed communications.

43. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones resulted in the injury of unnecessary expenditure of Plaintiffs' cellular telephone's battery power.

44. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones where a voice message was left which occupied space in Plaintiffs' telephones or network.

45. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones resulted in the injury of a trespass to Plaintiff's chattel, namely their cellular telephones and their cellular telephone services.

46. As a result of the calls described above, Plaintiffs suffered an invasion of privacy. Plaintiffs were also affected in a personal and individualized way by stress and aggravation.

## COUNT I
### (Violation of the TCPA)

47. Plaintiffs fully incorporate and reallege paragraphs one (1) through forty six (46) as if fully set forth herein.

48. Defendant willfully violated the TCPA with respect to Plaintiffs, especially for each of the auto-dialer calls made to Plaintiffs' cellular telephones after Plaintiffs notified Defendant that they wished for the calls to stop.

49. Defendant repeatedly placed non-emergency telephone calls to Plaintiffs' cellular telephones using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble

damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

50. Plaintiffs fully incorporate and reallege paragraphs one (1) through forty six (46) as if fully set forth herein

51. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

52. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

53. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

54. Defendant's actions have directly and proximately resulted in Plaintiffs' prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Octavio Gomez
Octavio Gomez, Esquire
Florida Bar No.: 0338620
Morgan & Morgan, Tampa, P.A.
One Tampa City Center

201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
TGomez@ForThePeople.com
LDobbins@ForThePeople.com
*Attorney for Plaintiff*